UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS KIM ELLER,

Petitioner,

Case No. 2:25-cv-10137

v.

Honorable Susan K. DeClercq
United States District Judge

NOAH NAGY,

Respondent.
_______________________________/

**OPINION AND ORDER DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Douglas Kim Eller, on parole supervision with the Michigan Parole Board and residing now in Riverdale, Michigan, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his state-court conviction for operating while intoxicated (OWI), third offense, operating a motor vehicle while license suspended, having an open alcoholic container in a motor vehicle, and being a fourth felony habitual offender.

For the reasons that follow, the petition for a writ of habeas corpus will be dismissed with prejudice.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Isabella County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> On the evening of October 18, 2019, defendant visited a casino with his nephew, his daughter, and his daughter's husband. Defendant left the casino early, went to the van that they all arrived in, and fell asleep. Back in the casino, defendant's daughter and her husband got into a domestic altercation, which led to defendant, his daughter, and his nephew leaving the casino in the van in the early morning hours of October 19, 2019. They were subsequently pulled over by tribal police responding to the domestic-assault incident. An officer who responded to the scene testified at trial that he identified defendant as the driver, determined that he was intoxicated, and arrested him. Defendant admitted at trial that he was in the driver's seat when police approached the vehicle, but testified that his nephew was the one driving the van, and defendant switched seats with his nephew after the van was pulled over.
>
> ********************************************************
>
> Before trial, the Michigan State Police (MSP) issued a statement in which it revealed that it was "investigating potential fraud" by the contract employees of a vendor, Intoximeters, that performed service and calibrations on the "Datamaster" breathalyzer machines in use throughout Michigan. These machines have been used to test alcohol levels in those suspected of OWI. One such machine was used in this case, and the results from the machine reflected that defendant's alcohol levels were over the statutory limit. Defendant moved for an adjournment in order to conduct his own investigation into the fraud allegations raised against Intoximeters' contractors to determine whether the fraud affected his case. The trial court denied defendant's motion.
>
> The trial court's decision to deny defendant's motion for an adjournment was not an abuse of discretion. The only evidence of the

> potential fraud that was before the court—the statement from the MSP—demonstrated that the fraud related to certification records involved with the servicing of the Datamaster machines. The MSP's statement explicitly provided that "the discrepancies do not directly impact or deal with the results of evidential breath tests." [1] Additionally, defendant's trial counsel told the court that she believed that the MSP "would have certified [the Datamaster machine in this case] at this point in time," and she reiterated that the MSP had told her "that they did come and determine that the Saginaw Chippewa Datamaster that's involved in this case wasn't part of this fraudulent activity." Trial counsel further agreed with the trial court that counsel had "been advised that the Michigan State Police have inspected and verified the instruments [and] that they are properly calibrated ...." In short, the information before the court when it denied defendant's motion suggested that the Datamaster machine used in this case was not affected by the alleged fraud, and that, even if it was, that fraud did not affect the results of the evidential breath test.

*People v. Eller*, No. 353416, 2022 WL 879776, at *1 (Mich. Ct. App. Mar. 24, 2022); *lv. den*. 510 Mich. 877, 978 N.W.2d 830 (2022).

The trial court denied Eller's post-conviction motion for relief from judgment. *People v. Eller*, No. 19-001271-FH (Isabella Cty. Cir. Ct., Nov. 7, 2023); ECF No. 9-8. The Michigan appellate courts denied Eller leave to appeal. *People v. Eller*, No. 369074 (Mich. Ct. App. July 29, 2024); *lv. den.* 14 N.W.3d 413 (Mich. Ct. App. 2024).

Eller now brings a habeas petition challenging his convictions and sentences on several bases, including denial of motion for directed verdict, jury instruction

---

[1] Nothing in the record—either submitted to the trial court or on appeal—suggests that the MSP's statement about what the fraud related to was inaccurate. (Footnote in original).

error, denial of right to present a defense through evidentiary error, and multiple instances of ineffective assistance of trial and appellate counsel. ECF No. 1.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## III. DISCUSSION

### A. Claim 1. The directed verdict claim.

Eller first argues that the trial court erred in failing to direct a verdict of acquittal on the OWI charge because there was no evidence that he was driving or operating the vehicle. ECF No. 1, PageID.7[2]

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to

[2] Eller's claim involving the trial court's failure to direct a verdict of acquittal is construed as an attack on the sufficiency of the evidence. *See United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002). To the extent that Petitioner alleges that the judge failed to follow Michigan law when he failed to direct a verdict of acquittal, this is non-cognizable on habeas review because it involves an issue of state law. *See King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001).

constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the requisite elements of the crime beyond a reasonable doubt. *Id.* at 318–19 (internal citation and footnote omitted) (emphasis in original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court gives circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence.").

More importantly, a federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court

disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Under Michigan law, conviction of operating a motor vehicle while intoxicated requires proof of three elements: (1) the defendant operated a motor vehicle, (2) on a highway or other place open to the general public or generally accessible to motor vehicles, (3) while under the influence of liquor or a controlled substance, or a combination of the two, or with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood. *People v. Hyde*, 285 Mich. App. 428, 448 (2009).

The Michigan Vehicle Code defines "operate" as "being in actual physical control of a vehicle." Mich. Comp. Laws § 257.35a(a). Circumstantial evidence can

be used to prove that a defendant was the driver of a motor vehicle, so as to sustain a conviction for drunk driving. *See e.g.*, *People v. Solmonson*, 261 Mich. App. 657, 662 (2004); *see also United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir. 1986). The Michigan Supreme Court has held that "a conscious person in a stationary vehicle might have 'actual physical control' and thus operate it" for purposes of the Michigan motor vehicle statutes. *See People v. Wood*, 450 Mich. 399, 403 (1995). In *Wood*, the court held that, in the context of a drunk driving prosecution, a defendant who was found passed out and unconscious in a McDonald's drive-through lane with his car's engine running, the transmission in "drive," and his foot on the brake was "operating" a vehicle. *Id.* at 405.

The evidence in the present case was sufficient for a rational trier of fact to conclude that Eller was operating the motor vehicle on the night in question, so as to support his conviction. The arresting officer, Officer Jeffrey Chaprnka, testified that Eller was the driver of the vehicle. ECF No. 9-3 at PageID.256. Eller himself admitted at trial to being in the driver's seat when the police approached the vehicle, although he claimed that his nephew had been driving the vehicle but that he switched seats with Eller when the police pulled the vehicle over. *Id.* at PageID.346–47. A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved

any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos*, 565 U.S. at 7 (quoting *Jackson*, 443 U.S. at 326). This Court must presume that the trier of fact resolved these conflicts in favor of the prosecution and defer to that resolution. The jury obviously chose to reject Eller's testimony and conclude, based on all the evidence, that he was the driver of the van pulled over by the police, so as to sustain his conviction. On habeas review, a federal court does not re-weigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). This Court cannot re-weigh the probative value that the jury gave to Officer Chaprnka's testimony that Petitioner was the driver of the vehicle on the night in question. Petitioner therefore is not entitled to habeas relief on this claim.

**B. Claim 3. The jury instruction claims.**

Eller in his third claim alleges he was denied a fair trial because of instructional error. ECF No. 1 at PageID.10.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire

trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154–55 (1977). Further, any ambiguity, inconsistency, or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

Eller first claims that the trial court erred in failing to give the jurors a missing witness instruction involving Officer Matthew Gibson, the other police officer involved in the traffic stop in this case, who was not called by the prosecution to testify. ECF No. 1 at PageID.10. This instruction would have instructed the jurors that they could infer that Officer Gibson's testimony would have been favorable to the defense. M Crim JI 5.12.

The Sixth Amendment guarantees a defendant the right to confront witnesses and to have compulsory process for witnesses favorable to them. However, the Sixth Amendment does not require the prosecution to call every witness who is competent to testify. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992); *Whittaker v. Lafler*, 639 F. Supp. 2d 818, 825 (E.D. Mich. 2009). The right to confrontation does not impose a duty upon the prosecution to call a particular witness. *United States v.*

*Bryant*, 461 F.2d 912, 916 (6th Cir. 1972); *See also Turnbough v. Wyrick*, 420 F. Supp. 588, 592 (E.D. Mo. 1976) (right to confrontation not denied by state's failure to call victim as a witness). Stated differently, the Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985). In *Cooper v. California*, 386 U.S. 58, 62, n. 2 (1967), the U.S. Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not produce an informant to testify against him to be "absolutely devoid of merit." *Id.* Therefore, the Sixth Amendment right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter,* 764 F.2d 1, 9 (1st Cir. 1985) (internal citations omitted).

Federal law does not require the production of *res gestae* witnesses. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, * 2 (6th Cir. Aug. 24, 1988) (citing *Bryant*, 461 F.2d at 916). Thus, whether a prosecutor exercised due diligence

in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 F. App'x at 559.

Eller presented no evidence that Officer Gibson would have offered exculpatory evidence had he testified; he would not be entitled to habeas relief because the prosecutor failed to call Officer Gibson to testify. *Atkins v. Foltz*, 1988 WL 87710, at *2.

The Court rejects the related instructional error claim. A criminal defendant does not have a clearly established federal right to a missing witness instruction. Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce Officer Gibson. *See Stadler v. Curtin,* 682 F. Supp.2d 807, 821–22 (E.D. Mich. 2010).

Eller next claims that the judge erred in giving the jurors the following instruction about blood-alcohol levels: "You may infer that the Defendant's bodily alcohol content at the time of the test was the same as his bodily alcohol content at the time he operated the motor vehicle." ECF No. 9-4 at PageID.381. This is a standard jury instruction in OWI cases. *See* M. Crim. JI 15.5(6). Eller argues that the instruction should have not have been given because the Datamaster machine's eliability had been called into question with the fraud allegations. ECF No. 1 at PageID.12. The Michigan Court of Appeals rejected Eller's argument, because "the

machine results were not affected, and the specific machine in this case was cleared of any involvement with the fraud." *People v. Eller*, 2022 WL 879776, at *6. Since there was no evidence that the Datamaster results in this case were affected by the alleged fraud, the instruction as given did not deny Eller a fair trial. Moreover, although the instruction told the jurors that they might infer that Petitioner's bodily alcohol content at the time the test was performed was the same as his bodily alcohol content at the time he operated the motor vehicle, it did not require the jurors to do so. Thus, the instruction as given did not remove the issue of the breath test's reliability from the jury's domain and thus did not violate Eller's right to a fair trial. *See Miskel v. Karnes*, 397 F.3d 446, 456–58 (6th Cir. 2005) (State court determination that conviction of operating motor vehicle with BAC of .10 or more (OMVI per se) did not result from unconstitutional mandatory presumption that required jury to presume that results of breath test were accurate, was not an unreasonable application of or contrary to clearly established federal law, precluding habeas relief). Eller is not entitled to habeas relief on his third claim.

**C. Claim 4. The evidentiary claims.**

Eller next raises a number of arguments regarding the Datamaster test results. ECF No. 1 at PageID.12. He argues that the trial court prevented him from effectively challenging the Datamaster results and erroneously permitting unqualified lay witnesses, Officer Chaprnka and Officer Jim Post, "to make

sweeping claims about the machine's near infallibility." ECF No. 1 at PageID.12. Eller contends that the officers' testimony improperly bolstered the accuracy and reliability of the Datamaster test results. *Id*. He further argues that the judge erred by overruling trial counsel's objections to their testimony, the Datamaster logs, and the test results. *Id.* Eller also contends he should have been permitted to refer to the "malfeasance" of David Johns and Andrew Clark, two Intoximeters employees who were ultimately convicted with crimes arising out of the MSP's Datamaster-fraud investigation. *Id.* According to Eller, had he been able to refer to that misconduct, the results of his trial would have been different. *Id.*

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "[S]tate and federal statutes and rules, not the Due Process Clause, ordinarily govern the admissibility of evidence in criminal trials." *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (citing *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012)) (cleaned up). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Further, "[t]o show a due process violation under [the] AEDPA rooted in an evidentiary ruling, this court has typically required a Supreme

Court case establishing a due process right with regard to that specific kind of evidence." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012).

To obtain habeas relief, a habeas petitioner cannot merely "pluck general statements out from the decisions to argue that due process bars 'fundamentally unfair' procedures.'" *Stewart v. Winn,* 967 F.3d at 539. Instead, the Supreme Court must have confronted "the specific question presented by this case," otherwise "the state court's decision could not be 'contrary to' any holding from this Court." *Woods v. Donald*, 575 U.S. 312, 317 (2015)(per curiam) (citing *Lopez v. Smith*, 574 U.S. 6 (2014) (per curiam)). It is not enough that a habeas petitioner's case is only "similar to" a Supreme Court case. This Court, in reviewing Eller's state court conviction on habeas review, must take care not to frame "the issue at too high a level of generality." *Id.* at 317–18. A habeas petitioner's "reliance on the general rule that the Due Process Clause prohibits 'fundamentally unfair' procedures—without a specific Supreme Court holding covering the type of due-process error [a habeas petitioner] asserts—would allow courts to 'transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" *Stewart v. Winn*, 967 F.3d at 540 (internal quotation omitted).

The Michigan Court of Appeals rejected the claim regarding the Datamaster logs, finding that under Michigan law at the time of Petitioner's trial, they were

admissible under the business records exception to the hearsay rule. *People v. Eller*, 2022 WL 879776, at *3 (citing *People v Fontenot*, 333 Mich. App. 528; 963 N.W. 2d 397 (2020)). After the Michigan Court of Appeals decided Eller's case, the Michigan Supreme Court vacated the business-records portion of the Court of Appeals' decision in *Fontenot*, explaining that a trial court may consider whether particular circumstances undermine a business record's trustworthiness under MRE 803(6). *People v. Fontenot*, 509 Mich. 1073, 1073 (2022). Michigan Rule of Evidence 803(6) provides that an otherwise admissible business record may be excluded if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *See also id.* As Eller's trial judge noted on post-conviction review, the Supreme Court did not conclude that datamaster logs could not be admitted under the business records exception to the hearsay rule:

> The Supreme Court modified the holding of the Court of Appeals in *Fontenot* to the extent that the Court of Appeals suggested that the trial court may not consider whether there are reasons to doubt the trustworthiness of a purported business record. The Supreme Court clarified that MRE 803(6) provides that an otherwise admissible business record may be excluded if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *People v Fontenot*, 509 Mich 1073; 975 NW2d 919 (2022). Therefore, the Supreme Court did not determine that Datamaster logs could not be admitted under MRE 803(6), but instead held that they may properly be excluded if a lack of trustworthiness is shown. In this case, defendant has failed to show a lack of trustworthiness or any other reason for exclusion of the Datamaster results. Defendant alleges that the Datamaster results in his case could have been affected by the actions of the convicted Datamaster

> technicians, but as previously discussed, there is no evidence linking this case with any Datamaster fraud.

*People v. Eller*, No. 19-001271-FH, at *4 (Isabella Cty. Cir. Ct., Nov. 7, 2023); ECF No. 9-8 at PageID.436.

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones*, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). The trial court's determination that the Datamaster logs and breathalyzer tests were admissible under the business-records exception to Michigan's hearsay rules is not cognizable on federal habeas review. *See Tessmer*, 82 F. App'x at 150 (holding that the admissibility of evidence under Michigan's hearsay rules is not cognizable on federal habeas review).

Eller's related claim that Officer Chaprnka and Officer Posts offered improper lay testimony to bolster the accuracy of the Datamaster machine does not entitle him to relief either because whether that testimony was admissible under Michigan's evidentiary rules is a question of state law. *See Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011) (holding that a federal habeas court could not disturb the state court's determination that a law-enforcement officer's testimony constituted permissible lay opinion under state evidentiary law); *see also Miskel v. Karnes*, 397 F.3d 446, 453

(6th Cir. 2005) (explaining that federal habeas courts "must defer to a state court's interpretation of its own rules of evidence and procedure").

Eller would also not be entitled to relief on any claim that the officers' opinion testimony was improper because it invaded the province of the jury to determine whether Petitioner was guilty.

In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287.

The Sixth Circuit's holding in *Cooper* does not entitle Eller to habeas relief for several reasons.

First, the officers did not testify as expert witnesses at Eller's trial. Second, the jury was instructed to judge a police officer's testimony by the same standard as the testimony of any other witness. ECF 9-4 at PageID.379. These two facts alone distinguish Petitioner's case from the situation in *Cooper*. *See Carter v. Vashaw*, 627 F. Supp. 3d 853, 861 (E.D. Mich. Sept. 13, 2022) (citing *Norton v. Boynton*, No. 08-13200, 2011 WL 282433, at *8 (E.D. Mich. Jan. 26, 2011)). Third, "the *Cooper* court owed no deference to the state court decision on these issues," because *Cooper*

was decided prior to the adoption of the AEDPA. *Id.* (quoting *Dorsey v. Banks*, 749 F. Supp. 2d 715, 758 (S.D. Ohio 2010)). In fact, there is not "a single case decided by the Sixth Circuit Court of Appeals, apart from *Cooper*, where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus." *Id.* Given the lack of holdings by the Supreme Court on the issue of whether a police officer can offer an opinion as to a criminal defendant's guilt or innocence, the Michigan Court of Appeals' rejection of Eller's bolstering claim was not an unreasonable application of clearly established federal law. *Id.* at 861–62 (citing *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Within this claim, Eller also argues he was denied due process because his attorney was not permitted to refer to the misconduct or fraud committed by Johns or Clark. ECF No. 1 at PageID.12.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[W]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal

defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins*, 341 F.3d 507, 511–12 (6th Cir. 2003).

In the present case, defense counsel was permitted to elicit testimony about the Michigan State Police's Datamaster-fraud investigation and that Johns's signature was on the log for the Datamaster machine used on Eller and later mention

in her closing argument that Intoximeter employees were being investigated by the Michigan State Police for fraud. ECF No. 9-3 at PageID.286–89, 365. Thus, counsel was not prevented from bringing up the fraud and misconduct involving the Datamaster machines. Eller was not completely barred from presenting evidence that the Datamaster machines' accuracy was unreliable. *See Fleming v. Metrish*, 556 F.3d 520, 535–36 (6th Cir. 2009). With the quantum of evidence on the defense theory in the record, this Court concludes that the Petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen v. Howes*, 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009) (citing *Crane*, 476 U.S. at 690 (citation and internal quotations omitted)). Petitioner is not entitled to relief on his fourth claim.

**D. Claims 2, 5-11. The ineffective assistance of counsel claims.**

Eller next alleges he was denied the effective assistance of trial and appellate counsel. ECF No. 1 at PageID.15–16.

Under *Strickland v. Washington*, a defendant is required to satisfy a two-prong test to establish the denial of the effective assistance of counsel. 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must overcome a strong presumption that counsel's behavior was within the wide range of reasonable professional assistance. *Id*. Stated differently, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be sound trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his or her defense. *Id.* To demonstrate prejudice, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Eller, in his second claim, alleges that trial counsel was ineffective for agreeing to the judge re-reading the standard jury instruction concerning the definition of operating a motor vehicle when the jury asked the court a question about what constituted "operating a vehicle." Eller argues that his trial counsel should have requested an "instruction reflecting the current caselaw that defines 'operation' with a more in depth definition." ECF No. 1 at PageID.9. The Michigan Court of Appeals rejected the claim, because the jury instructions in this case were legally accurate, in that the instruction contained language from the very statute,

MICH. COMP. LAWS § 257.35a, which defines operating "means driving or having actual physical control of the vehicle." *People v. Eller*, 2022 WL 879776, at *6–7.

Trial counsel is not ineffective for failing to object to jury instructions that are correct. *See Campbell v. Coyle*, 260 F.3d 531, 557 (6th Cir. 2001). The instruction given by the judge on the definition of operating a vehicle was legally adequate. Accordingly, counsel's failure to object to the instruction or to request more detailed instruction on the definition of operating was not objectively unreasonable. Eller cannot show that a different instruction would likely have changed the outcome of his trial to entitle him to habeas relief on his claim. *See Jacobs v. Sherman*, 301 F. App'x 463, 466–67 (6th Cir. 2008).

Eller, in his fifth claim, alleges that trial counsel was ineffective for failing to object to the prosecution's use of inadmissible hearsay evidence to defeat his motion for a directed verdict. ECF No. 1 at PageID.15. Eller argues that Officer Chaprnka relied on secondhand information obtained from Officer Gibson, who did not testify at trial, to conclude Eller was the driver. *Id.*

The trial judge rejected Eller's claim on post-conviction review:

> First, defendant argues that he was denied effective assistance of counsel when the prosecutor was allowed to use inadmissible hearsay evidence to defeat his motion for directed verdict. Defendant points out that Officer Chaprnka testified at trial that defendant's license and registration was obtained by Officer Gibson and was called in to dispatch, who ran it through the Secretary of State. Defendant argues that this testimony was hearsay. Hearsay is a statement, other than the one made by the declarant while testifying at a trial or hearing offered

> in evidence to prove the truth of the matter asserted. MRE 801(c). Defendant does not identify any out of court statement in Officer Chaprnka's testimony. Although Officer Chaprnka testifies regarding actions taken by Officer Gibson, his testimony does not include any statements made by Officer Gibson.

*People v. Eller*, No. 19-001271-FH, at *2; ECF No. 9-8 at PageID.434.

Defense counsel was not deficient by failing to object to the alleged hearsay offered during Eller's trial, in light of the fact that the trial judge determined that Officer Chaprnka's testimony was not hearsay. *See Adams v. Smith*, 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003).

Eller next alleges, in his sixth and seventh claims, that trial counsel was ineffective for failing to object to prosecutorial misconduct. Eller claims that the prosecutor committed misconduct by arguing facts that had not been introduced into evidence and by using Eller's silence as substantive evidence of guilt. ECF No. 1 at PageID.15.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form

the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643–45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103). A habeas petitioner must clear a "high bar" in order to prevail on such claims. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

Eller initially argues that the prosecutor used facts not introduced into evidence in responding to Eller's motion for a directed verdict and in closing arguments, by arguing that Officer Chaprnka saw Eller in the driver's seat, despite Officer Chaprnka not testifying to that fact. ECF No. 1 at PageID.15.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Likewise, it is improper for a prosecutor during opening or closing arguments to bring to the jury any purported facts which have not been, or will not be, introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir.

2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, the prosecutor's remarks were not improper because they were based on reasonable inferences from the evidence presented at trial, namely, that Eller was in the driver's seat when Officer Chaprnka reached the car as well as Eller's own admission at trial that he was in the driver's seat at the time the officer approached the vehicle. *Collins*, 209 F.3d at 535.

Finally, any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. ECF No. 9-4 at PageID.376; *See Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Here, the prosecutor's remarks did not deprive Eller of a fundamentally fair trial; he cannot show that he was prejudiced by counsel's failure to object. *Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006).

Eller also claims that the prosecutor improperly used his silence against him as substantive evidence. ECF No. 1 at PageID.15.

On direct examination, Eller admitted he did not tell police he was not driving the vehicle. ECF No. 9-3 at PageID.341–42. The prosecutor confirmed this fact with Eller on cross-examination. *Id.* at PageID.354–55. The prosecutor later highlighted Eller's omissions to police during closing, stating:

> We also heard testimony that [Eller] never once told the officers, hey there's – there's a misunderstanding here. I wasn't driving before this vehicle was pulled over. It was my nephew. Which doesn't make any sense. You also heard him testify that his license was suspended and that when he received the ticket that his license was suspended he never brought it up to any officer to say, hey how am I getting a ticket for a driving on a license suspended if I wasn't driving the vehicle? Because he was driving, plain and simple.

*Id.* at PageID.361.

To the extent that the prosecutor's questions and remarks could be construed as commenting on Eller's pre-arrest silence, he would not be entitled to relief.

The Supreme Court has held that prosecutors in a criminal trial may use a defendant's pre-arrest silence as substantive evidence of his guilt so long as the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 570 U.S. 178, 183–84, 191 (2013); *see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014). Moreover, Supreme Court case law has established that a defendant normally does not invoke the privilege against self-incrimination simply by remaining silent. *Salinas v. Texas*, 570 U.S. at 186. In addition, a prosecutor may

use a defendant's pre-arrest silence to impeach the defendant's credibility. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980). Because it was permissible for the prosecutor to introduce evidence of Eller's pre-arrest silence, particularly to impeach his credibility, counsel was not ineffective for failing to object to the admission of this evidence. *Abby v. Howe*, 742 F.3d at 228.

To the extent that the prosecutor's comments and questions could be construed as referring to Eller's post-arrest silence, he would also not be entitled to relief.

In the absence of any indication that a criminal defendant had received his or her *Miranda* warnings, the use of post-arrest silence to impeach a defendant's credibility when that defendant chooses to take the witness stand does not violate the Due Process Clause. *See Fletcher v. Weir*, 455 U.S. 603, 606–07 (1982). In *Fletcher,* the Supreme Court held that it was not unconstitutional for a prosecutor to use the defendant's post-arrest silence for impeachment purposes, where the defendant testified at trial that he stabbed the victim in self-defense and that the stabbing was accidental. *Id.* Where the record is silent with respect to whether or not a defendant received *Miranda* warnings, and, in the absence of such warnings, comments on a defendant's post-arrest silence at a criminal trial do not violate due process. *United States v. Christian,* 404 F. App'x 989, 992–93 (6th Cir. 2010). In the present case, there is no indication from the record that Eller had been advised

of his *Miranda* rights, or that he asserted his right to remain silent. Accordingly, the prosecutor's questions to Eller about failing to tell the police, post-arrest, that he was not the driver of the vehicle did not violate his Fifth Amendment right against self-incrimination or his Fourteenth Amendment right to due process. The prosecutor's questions and comments regarding Eller's post-arrest silence were not improper, therefore, counsel's failure to object to references to his post-arrest silence was not ineffective assistance of counsel. *See Pillette v. Berghuis*, 630 F. Supp. 2d 791, 803 (E.D. Mich. 2009), *aff'd in part, rev'd in part on other grds*, 408 F. App'x 873 (6th Cir. 2010).

In his eighth claim, Eller contends that trial counsel was ineffective for failing to object to certain errors in the pre-sentence investigation report (PSIR) or to allow Eller to review the PSIR. ECF No. 1 at PageID.15–16.

On direct appeal, the Michigan Court of Appeals rejected Eller's claim that he was entitled to resentencing on his claim that the trial court relied on inaccurate information. The Michigan Court of Appeals held that Eller waived his claim concerning the PSIR's accuracy and more importantly, the complained of language in the PSIR (that Eller was a suspect in the domestic dispute) was not inaccurate. *Eller*, 2022 WL 879776, at *9.

In denying Eller's motion for relief from judgment, the trial court also rejected Eller's allegation that he had been unable to review the PSIR, prior to sentencing:

> [D]efendant argues that he was not given the opportunity to read the Presentence Investigation Report in its entirety and so did not notice errors it contained. Defendant does not deny that his attorney went over the PSI with him prior to sentencing. Notably, defendant does not allege that PSI errors warrant reversal of his conviction. Instead, defendant requests correction of the PSI, which is not relevant to the relief generally sought in defendant's motion for relief from judgment. The alleged errors relate to the description of the offense and the amount of parole violations and prison misconducts defendant had during previous prison terms. Defendant fails to even allege that the correction of such errors would have caused the result of the proceedings to be different.

*People v. Eller*, No. 19-001271-FH at *3; ECF No. 9-8 at PageID.435.

The sentencing transcript belies Eller's claim. Eller reviewed the PSIR with his trial counsel, trial counsel requested several challenges to the PSIR, and the trial judge gave Eller the opportunity to make changes to the PSIR, which he declined. ECF No. 9-5 at PageID.402–05. And given that Eller himself did not request the changes that he now alleges his counsel should have requested, he is not entitled to relief. *See Allen v. Stovall*, 156 F. Supp. 2d. 791, 797 (E.D. Mich. 2001) ("Petitioner's failure to dispute the accuracy of her pre-sentence investigation report precludes her from maintaining a habeas corpus challenge to its consideration by the sentencing judge.").

In any event, there is no federal constitutional right to a pre-sentence investigation and report. *See Bridinger v. Berghuis*, 429 F. Supp. 2d 903, 909 (E.D. Mich. 2006); *Allen v. Stovall*, 156 F. Supp. 2d at 797. Therefore, the mere presence of hearsay or inaccurate information in a pre-sentence report does not constitute a

denial of due process so as to entitle a petitioner to habeas relief. *Allen*, 156 F. Supp. 2d at 797. Moreover, because the federal constitution does not require a state court to prepare or consider a pre-sentence report, Eller had no federal constitutional right to review any such report prior to sentencing. *Bridinger*, 429 F. Supp. 2d at 909.

Finally, Eller failed to show that the information in the pre-sentence investigation report was inappropriate or inadmissible, hence, trial counsel was not ineffective for failing to object to the pre-sentence investigation report. *See e.g.*, *Howard v. U.S.*, 743 F.3d 459, 464–67 (6th Cir. 2014).

In his ninth claim, Eller alleges that trial counsel was ineffective for failing to investigate the Datamaster technicians falsifying records and to file a *Daubert* motion to exclude the Datamaster logs as unreliable records. ECF No. 1 at PageID.16).

As to the first part of this claim, Eller is wrong. Counsel became aware of the Michigan State Police's fraud investigation on January 15, 2020. ECF No. 9-9 at PageID.475. After learning of the allegations, Eller's trial counsel filed a motion for an adjournment. *Id.* At the February 7, 2020 motion hearing, counsel conceded the Michigan State Police told her that the Datamaster machine at issue was not affected by the fraud, but counsel nonetheless requested an adjournment to conduct her own investigation. ECF No. 9-2 at PageID.162–65. The trial court denied counsel's request, and trial began three days later on February 10, 2020, whereas previously

mentioned, counsel elicited testimony about the MSP's Datamaster-fraud investigation and later mentioned it in her closing argument ECF No. 9-3 at PageID.286–89, 365. Counsel thus did all she could do to investigate this issue and did bring it to the jurors' attention.

Eller also claims that counsel was ineffective for failing to move for a *Daubert* hearing to challenge the admissibility of the Datamaster machine logs. ECF No. 1 at PageID.16. Petitioner bases his claim on the United States Supreme Court case of *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993).

As an initial matter, the Supreme Court's holding in *Daubert* involves the application of the Federal Rules of Evidence, which are not relevant to determining the constitutionality of a state court conviction. *See Norris v. Schotten,* 146 F.3d 314, 335 (6th Cir. 1998); *See also Anderson v. Jackson*, 567 F. Supp. 2d 973, 983 (E.D. Mich. 2008) (*Daubert* decision concerning the admission of expert testimony was concerned with the Federal Rules of Evidence and, thus, did not apply to state criminal proceedings). Eller would not be entitled to habeas relief on any independent claim involving the state trial court's failure to conduct a *Daubert* hearing.

In any event, as the trial court and the Michigan Court of Appeals indicated, the accuracy of the Datamaster machines was not adversely affected by the fraud committed by the two employees. *People v. Eller*, 2022 WL 879776, at *1. In light

of this analysis, Eller failed to show that a *Daubert* hearing would have been successful, hence, he failed to show that trial counsel was ineffective for failing to move for such a hearing. *See Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012).

In his eleventh claim, Eller alleges that counsel was ineffective for (1) failing to object to the admission of the Datamaster logs as a violation of his right to confrontation, and (2) "allowing an unnamed state police sergeant to say [through] other witnesses that the Datamaster at issue was not [a]ffected" by the fraud, which Eller claims also denied him due process and a fair trial. ECF No 1 at PageID.16–17. As to the latter issue, Eller appears to be referencing Officer Post's testimony that an MSP sergeant, Sergeant Gettle, informed him and the Saginaw Chippewa Tribal Police Department that the Datamaster machine at issue was not affected by the fraud allegations. ECF No. 9-3 at PageID.289–93.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36 (2004). However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823–26 (2006); *See also Desai v. Booker*, 538 F.3d 424, 425–26 (6th Cir. 2008). Testimonial statements do not

include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford*, 541 U.S. at 51–52, 56. In holding that the Sixth Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

*Davis,* 547 U.S. at 823–24 (quoting *Crawford*, 541 U.S. at 51).

Although certain forensic reports made for the purpose of proving some fact at a criminal defendant's trial are generally considered testimonial, "documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Melendez-Diaz v Massachusetts*, 557 U.S. 305, 311 n.1 (2009) ("[I]t is not the case, that anyone whose testimony may be relevant in establishing the . . . accuracy of the testing device[] must appear in person as part of the prosecution's case."). "Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Id.* Several federal courts have held that documents and certificates regarding the routine accuracy checks of equipment are not testimonial for purposes of the Confrontation Clause. *See United States v. Foster*, 829 F. Supp. 2d 354, 362 (W.D. Vir. 2011)

(certificate of accuracy for breathalyzer unit); *United States v. Forstell*, 656 F.Supp.2d 578, 582 (E.D. Vir. 2009) (certificate of accuracy for radar unit); *see also Cook v. Bayle*, 2016 WL 1627659, at *3–5 (N.D. N.Y. 2016) (calibration and maintenance records for breathalyzer unit); *United States v. Sage*, 2015 WL 1746610, at *3–6 (E.D. Cal. 2015) (certificate of accuracy for radar unit).

Because neither the Datamaster logs nor the officer's testimony about them violated the Confrontation Clause, counsel was not ineffective for failing to object to the admission on this evidence. *See e.g. United States v. Johnson*, 581 F.3d 320, 328 (6th Cir. 2009). Eller, therefore, is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

Eller further alleges that appellate counsel was ineffective. ECF No. 1 at PageID.15–16.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *See Evitts v. Lucey*, 469 U.S. 387, 396–397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). Nonetheless, court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that

appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Eller alleges in his fifth through ninth and eleventh claims that appellate counsel was ineffective for failing to raise on his appeal of right the issues that Eller raised in his post-conviction motion. ECF No. 1 at PageID.15–16.

As discussed above, Eller's claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Moreover, because trial counsel was not ineffective regarding her handling of these claims, appellate counsel was not ineffective in failing to raise the ineffective assistance of trial counsel claims raised by Eller in his post-conviction motion (Claims # 4–9, 11) on Eller's appeal of right. *See e.g.*, *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

In his tenth claim, Eller also argues appellate counsel was ineffective for raise use the Michigan Supreme Court's decision in *Fontenot* to challenge the admission of the Datamaster evidence on appeal. ECF No. 1 at PageID.16. As already discussed, the trial judge recognized that the Michigan Supreme Court's holding in *Fontenot* did not hold that Datamaster logs could not be admitted under the business-records exception the hearsay rule; instead, the Supreme Court simply concluded they may be excluded if a lack of trustworthiness is shown. ECF No. 9-8 at

PageID.436. The judge concluded that the Datamaster logs were properly admitted because Eller "has failed to show a lack of trustworthiness or any other reason for exclusion of the Datamaster results," *Id.*

Moreover, as the trial judge indicated in denying Eller's claim, the Michigan Court of Appeals affirmed Eller's conviction on March 24, 2022. The Michigan Supreme Court did not issue their decision in *Fontenot* until July 8, 2022, after the Michigan Court of Appeals affirmed Eller's conviction. *People v. Eller*, No. 19-001271-FH, at *4; ECF No. 9-8 at PageID.436. Because the Michigan Supreme Court did not issue their decision in *Fontenot* until after Petitioner's appeal of right concluded, appellate counsel was not ineffective for failing to argue that the Datamaster records could be excluded if they lacked trustworthiness. "[A]ppellate counsel is not ineffective for failing to predict the development of the law." *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010); *see also Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir.2001) (holding that a petitioner's appellate counsel was not ineffective for failing to make a particular argument because "we cannot conclude that Lott's counsel should have reasonably anticipated" the change in the law, even though there were conflicting opinions in the Ohio Court of Appeals on the issue); *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir.1986) (noting that "nonegregious errors such as failure to perceive or anticipate

a change in the law . . . generally cannot be considered ineffective assistance of counsel").

## IV. CONCLUSION

Accordingly, this Court denies the petition for writ of habeas corpus with prejudice.

This Court also denies a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, a certificate of appealability is denied because Eller failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). However, if Petitioner chooses to appeal this Court's decision, he may proceed *in*

*forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3). *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

For the foregoing reasons, the Court **DISMISSES WITH PREJUDICE** the Petition for a Writ of Habeas Corpus and **DENIES** Eller a certificate of appealability. Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: October 20, 2026